## MAGNOLIA COMPRESS & WAREHOUSE CO. v. DAVIDSON.

### No. 9527.

Court of Civil Appeals of Texas. Galveston. March 4, 1931.

Rehearing Denied March 26, 1931.

Boyles, Brown & Scott, Miller Alexander, and Jo. E. Shaw, all of Houston, for appellant.

Morris, Sewell, Taylor & Morris and W. J. Knight, all of Houston, for appellee.

LANE, J.

This suit was instituted by R. L. Davidson against Magnolia Compress & Warehouse Company, hereinafter, for convenience, called the compress company, to recover judgment for $566.73 with interest thereon.

The plaintiff substantially alleged that he entered into a contract of employment with the compress company through its general agent and manager, C. S. Kinney, on the 1st day of August, 1927; that such contract was for a term of one year extending from the 1st day of August, 1927, to the 1st day of August, 1928; that by the terms of the contract the compress company agreed to pay plaintiff for the year at the rate of $225 per month; that he performed the duties of his employment during the whole of said year and was paid by the defendant the said sum agreed upon by the terms of the contract; that immediately upon the expiration of said year he reported for duty as he had theretofore done and was put to work as usual by defendant, and was thereby led to believe that the contract was to be continued in force for another year; that by reason of such acts there exists between the parties an implied contract of renewal of the former contract; that after he had begun to perform his usual work in August, 1928, by the consent and acquiesence of the defendant without entering into any express renewal contract, defendant by its agent Kinney placed upon plaintiff duties other than those theretofore required of him, and that it was then agreed between the parties that plaintiff was to be paid by defendant for such additional services the sum of $25 per month, thus increasing his wage for the remainder of the year to $250 per month; that thereafter plaintiff performed all things required of him under the contract for which he was paid $250 per month up to the 31st day of April, 1929; on said date last mentioned, which was three months prior to the time for the expiration of plaintiff's contract, defendant disavowed and repudiated said contract and discharged plaintiff from its employ without cause or justification and thereafter failed and refused to pay him the salary due him for the months of May, June, and July of the year 1929, and still refuses to pay the same to plaintiff's damage in the sum of $750; that such sum is due plaintiff, less $183.27 earned by him while engaged in work for others during said unexpired period of said contract.

Defendant answered by general and special demurrers and general denial.

The battle lines being thus formed, the court overruled all demurrers and exceptions. Whereupon a jury was called to try the cause, who, in answer to special issues submitted by the court, found that it was impliedly agreed and understood between the plaintiff and C. S. Kinney during the month of August, 1928, that the plaintiff should be employed as head weigher for defendant at a salary of $250 per month from that time until July 31, 1929, and that defendant discharged plaintiff.

Upon the findings of the jury and the evidence, the court rendered judgment for the plaintiff against defendant for the sum of $566.75, with interest thereon at the rate of 6 per cent. per annum from and after the 1st day of August, 1929.

The compress company has appealed.

When the record in this cause was filed in this court, it did not disclose that notice of appeal was given by appellant, and our attention was called to such fact by appellee's objection to a consideration of the appeal for want of jurisdiction. Since then, however, upon motion of appellant, the record has been supplemented, and it now shows that notice of appeal was duly given and the cause is now properly before us for our consideration of the matters presented by the appeal.

Appellant first insists that the court erred in overruling its general demurrer, in that plaintiff alleged no fact or facts entitling him to recover in law or in equity; and, second, that the court erred in overruling its special exception to that part of plaintiff's petition wherein it undertakes to allege what acts or circumstances the plaintiff relied upon to establish the assertion that plaintiff was led to believe that there was a renewal of the original contract of employment between the parties, because such allegations were insufficient to apprise defendant of the nature of such acts or circumstances relied upon as constituting conduct leading plaintiff to the belief that the former contract was renewed or continued in force.

■ We have carefully read the plaintiff's petition and have reached the conclusion that it is not subject to either the general demurrer or the special exception addressed to it. 39 Corpus Juris pp. 49 to 50; Accidental Oil Mills v. Tomlinson (Tex. Civ. App.) 8 S.W.(2d) 558; Houston Ice Co. v. Nicolini (Tex. Civ. App.) 96 S. W. 84.

We therefore overrule appellant's complaints of the action of the court in overruling such demurrer and special exception without extended discussion. We will add, however, the following:

In 39 Corpus Juris, p. 49 et seq. § 20 et seq., the following rule is stated: "When one enters into the service of another for a definite period, and continues in the employment after the expiration of that period, without any new contract, the presump-

tion is that the employment is continued on the terms of the original contract and that provisions and restrictions forming essential parts of the contract, although collateral to the employment itself, continue in force."

Again: "A mere change in the contract by which increases of salary are given from time to time will not affect the application of the rule."

In section 22, p. 51, it is said: " * * * Where an employee is ready and willing to perform services contracted for, and the employer has repudiated the contract, the former need not thereafter tender his services or keep himself in readiness to perform."

By appellant's third assignment contention is made that up to the time the plaintiff had introduced his evidence and rested, he had not sustained by proof the case as alleged in his petition, especially the allegation that defendant had discharged him; therefore the court erred in overruling defendant's motion for an instructed verdict in its favor, made at the time plaintiff had rested.

■ We overrule the contention. The evidence was amply sufficient to support the allegation that defendant had by its acts renewed the former contract for a period of one year from the 31st day of July, 1928, to July 31, 1929, and it was also sufficient to support the allegation that defendant had disavowed having a contract with plaintiff and discharged him and failed to pay him the salary due him.

The undisputed evidence shows that C. S. Kinney, general manager of appellant, acting for appellant, employed appellee on the 1st day of August, 1927, to work for appellant for the period of one year from said date, or until the 1st day of August, 1928; that on the 1st day of August, 1928, appellee reported for work as usual and was permitted to continue to work as usual through the month of August, 1928, at the same salary per month he had been paid from the time of his employment without entering into any new contract. Appellee testified that during the month of August, 1928, appellant through its general manager, Kinney, imposed upon him new and additional duties and agreed, on or about September 7, 1928, to increase his salary to $250 per month; that he got the first check with increase in salary on September 15, 1928; that his salary was payable every 15 days; that he got his last payment, for the month of April, 1929, on April 31, 1929; that in April, 1929, C. S. Kinney told him he (Kinney) would like to keep him but, as the compress was having some kind of trouble he could not do so, and said: "You go out and seek other employment * * * no matter if you don't make but One Hundred dollars per month, that will help me just that much * * * this fall I will pay you the difference in the amount of money that you make on the outside and your salary." That having been told that appellant could not and would not use his services after the 1st of May, 1929, he obtained other employment and earned a net sum of $183.27 during the three months of May, June, and July, 1929.

■ We think the evidence stated was such as justified the court in refusing to sustain appellant's motion for an instructed verdict at the time appellee rested. However, if it be conceded that there was not sufficient evidence offered to support a judgment for appellee at the time he rested, which we do not do, appellant is nevertheless in no position to here urge a reversal of the judgment because of a lack of sufficient evidence to support it at the time appellee rested, as it chose, after the court had overruled its motion, to proceed to introduce evidence which, we think, when taken in connection with the plaintiff's evidence, is sufficient to support a judgment for appellee.

C. S. Kinney, president and general manager of the business affairs of appellant, who alone employs and discharges employees of appellant, testifying in its behalf, said: "I told the men that it was going to be impossible for me to keep them all on, as much as I would like to do so; I called their attention to the fact at that time that not a single man in the service of the Company had a contract and that I was at liberty to discharge them without taking on any obligation for salaries, but I did tell them that next fall, if we did well and made money that 'I will reimburse you', or 'the company will reimburse you for any loss you may sustain by getting out and getting positions elsewhere at a lower salary than we are paying you and what we would pay you in the event we were able to keep you on.' There was not a man in that meeting that questioned my statement that none of them had contracts, not a man raised the question; there were some eight or ten men in the room at the time. I stated to the men that it was my intention to reimburse them for this loss if they had to accept positions elsewhere that would pay less than they were getting with me, but it was a physical impossibility for us to keep on and continue to pay their salaries. I did not designate which men must get out and look for positions at that meeting. I took that position for this reason, that we had mechanics, we had checkers, we had weighers, we had tractor drivers, and all classes of men, some of whom could secure work elsewhere easier than a higher-up man, sometimes. I did not designate or point out any man who should withdraw from our employment; at that meeting I did not pick out this man or that

man, but I said to the men in general—'I want every man in this room who can secure a position elsewhere to do so and relieve me of that expense during the balance of this cotton season, and those of you who do secure those positions, next fall, when we get into business, if we do well, we will reimburse you for whatever loss you have sustained;' that was the actual statement made at that meeting. Those men who left came to me and told me that they thought they could get a position here and there, and those men stepped out gracefully and secured other positions with the understanding that if we could, the next fall we would reimburse them. Every man on the job went out and tried to get a position and those who could secure positions left; Mr. Davidson secured a position and left. There were no hard feelings absolutely, as far as I was concerned. There was a written contract in 1927 between me and the men. None of these men or Mr. Davidson who were in my office at that time, either at that time or subsequent thereto, protested to me concerning my telling them that they could go and get other jobs."

On cross-examination: "We sold the Magnolia Compress & Warehouse Company in June, 1929. We first began negotiations to sell that Company the latter part of May, sometime in May. I do not mean we consummated the sale between the latter part of May and June; I mean I put it in the hands of the sales agent during the latter part of May, about the 15th of May, I think somewhere along there, about the 15th of May. That plant was a $600,000.00 company. We sold a $600,000.00 corporation between May and June, 1929. I did not have any intention of selling it at the time I called these men together. I believe it was in May that I turned it over to a sales agent; that is, the latter part of the month following the conversation with these men. I have paid none of these men anything for the difference between the jobs they got and what they were going to pay them. I said awhile ago it was physically impossible to pay these men and keep on; some of them I could keep and some I could not; I had to keep some. Parkins came back to us after this conversation and said that he had found it hard to find a position and that he would be willing to accept a tractor driver's job in place of his press room—his clerkship job if we would take him back, he would try to get along on less money in order not to lose any time, and we accepted that proposition and employed him at a less salary. I believe Parkins was with me about four years; he is a pretty faithful employee. I never did pay him the difference between what he earned with us at that time and what he was earning before I made this proposition. I never did invite Mr. Davidson to come back to work when he did not show up the next morning. I never did offer to pay Mr. Davidson the difference between what he had earned and what he was going to earn if he stayed with us. I believe Mr. Davidson made a demand on us for it through his attorneys. Davidson came to my office once or twice and discussed matters with me; I do not recall whether that came up for discussion, or not. I did not have any written contract with Mr. Davidson for the year 1928–1929. I did not have any written contract with any of our employees for that year and at that meeting I told them that we had no contracts, absolutely. I say that we had a written contract with Mr. Davidson for the year previous."

By appellant's fourth and fifth assignments it is insisted: First, that the court erred in submitting to the jury the inquiry as to whether or not there was an implied agreement and understanding between plaintiff and C. S. Kinney during the month of August, 1928, that plaintiff should be employed at a salary of $250 per month from that time until July 31, 1929; and, second, in submitting the inquiry as to whether the compress company discharged the plaintiff at any time.

The objection made by appellant to the submission of the first inquiry is that it includes the submission of a question of law.

██ We think the submission of any part of the inquiry was a submission of a question of law and unnecessarily submitted. The undisputed facts show that appellee was by the permission and acquiescence of C. S. Kinney, president and general manager of the business affairs of appellant, to continue his usual services during the month of August, 1928, after the expiration of the period of the first contract at the same salary as before, without entering into any new contract. We think such facts show a continuation of the original contract as a matter of law. Houston Ice & Brewing Co. v. Nicolini (Tex. Civ. App.) 96 S. W. 84; Accidental Oil Mills v. Tomlinson (Tex. Civ. App.) 8 S.W.(2d) 558; 39 Corpus Juris, page 49, sec. 20. We have already stated the facts referred to above and it is unnecessary to restate them here.

While we agree with appellant that the inquiry was improperly submitted, we can by no means agree that its submission in any way prejudiced the rights of appellant.

█ What we have said as to the first inquiry submitted is equally applicable to the second. The undisputed evidence, which we have already stated, shows that appellee was discharged by appellant's president and general manager, Kinney, on or about the 31st day of May, 1929. Therefore, while the inquiry was unnecessarily submitted, such submission was harmless.

**638**

Appellant requested the court to submit the following inquiries:

First. Did the compress company make a contract of employment with R. L. Davidson on or about August 1, 1928?

Second. Was such a contract of employment from month to month, or was it for a period of one year beginning August 1, 1928?

Third. During May, June, and July, 1929, did R. L. Davidson earn in outside work $383.27?

We have already held that it was shown as a matter of law that appellant did make a contract of employment with appellee for a year, beginning on the 1st day of August, 1928, and to end on the 31st day of July, 1929. Such being a fact, the court did not err in refusing to submit to the jury the first two inquiries requested by appellant. Neither did the court err in refusing to submit the third inquiry, for unquestionably the only testimony with reference to the amount earned by appellee in outside work during May, June, and July, 1929, was to the effect that it was a gross sum of $383.27.

Having reached the conclusion that no reversible error in the trial of the cause appears of record, the judgment is affirmed.

Affirmed.