Alonzo C. THAMES et al., Appellants,

v.

ROTARY ENGINEERING COMPANY, Appellee.

No. 5288.

Court of Civil Appeals of Texas.

El Paso.

Aug. 6, 1958.

Rehearing Denied Aug. 27, 1958.

**590**

Turpin, Kerr & Smith, Thornton Hardie, Jr., Midland, Blanton & McMahon, Odessa, for appellants.

Harris & Culver, H. S. Harris, Jr., Whitaker & Brooks, Richard S. Brooks, Midland, for appellee.

FRASER, Justice.

This suit originated in the District Court of Midland County, Texas, as a suit for a permanent injunction to enjoin the two defendants in the court below, appellants herein, from carrying on business activities engaged in or contemplated by the plaintiff, appellee herein. The trial was held before the court, and judgment entered for the plaintiff, enjoining defendants below from engaging, directly or indirectly, in the trade or business of hydrocarbon well logging for a period of five years from the date of termination of employment, within an area having a radius of 200 miles from Midland, Midland County, Texas, and this appeal results.

Defendant-appellants were originally employed by a partnership calling itself the "Rotary Engineering Company." The two defendant-appellants executed non-competitive agreements in 1951, agreeing not to compete with said partnership for a period of five years after termination of employment with appellee. Subsequently, at different dates, various members of the partnership withdrew, and one partner died in 1955. Each time new articles of partnership were entered into by the survivors. Later in the year 1955, Richard S. Brooks, who was then trustee, conveyed the partnership assets to the appellee, a corporation comprised of the remaining partners.

Appellants terminated their employment in 1954 and 1956, and appellee then secured this injunction. (Thames in 1954; and Eubanks in 1956.)

Appellants appeal on the ground that there was no evidence, or insufficient evidence, to show assignment of the non-competitive agreements from the original partnership through to present appellee, and that such agreements were not assignable without the acquiescence and consent of defendants, and that there was no proof of such acquiescence or consent.

First of all, we do not find any inhibition against the assignment or transfer of this type of covenant or agreement. These are not agreements to work, but are restrictive agreements promising not to compete. It has been held that such are transferrable or assignable as assets. Blaser v. Linen Service Corp. of Texas, Tex. Civ.App., 135 S.W.2d 509; Malakoff Gin Co. v. Riddlesperger, 108 Tex. 273, 192 S.W. 530.

■ The record here shows that in each amended article of partnership there is reference made to the transfer of all assets of the former partnership into the new partnership, and that the partnership assets were transferred to the corporation by Richard S. Brooks, Trustee, in 1955. It does not appear that any additional burden or hazard was cast upon the appellants, or either of them, by the various changes. It is equally clear from the record that the appellants continued working without any new type of agreement, as the various changes in the makeup of appellee transpired. We believe that the record substantiates appellee's position that these non-competitive agreements were transferred into and inherited by each succeeding partnership, and, eventually, the corporation. By their continuing to work, without any apparent change in their contractual relations, we also believe that appellants acquiesced and consented to such changes by virtue of their continuing to accept their salaries and perform the services required. As said in the Malakoff case, supra [108 Tex. 273, 192 S.W. 533]:

"It must be immaterial to them whether they are required by the corporation to keep the contract, or whether they are so required by the co-partnership."

In other words, appellants had received the benefits during the changes, and we think are, therefore, obligated to abide by their promise and commitment. A similar situation was found in Oak Cliff Ice Delivery Co. v. Peterson, Tex.Civ.App., 300 S.W. 107, 112, the court there saying, on motion for rehearing:

"for the effect of its language (the petition) was to allege that appellee remained in appellant's (corporation's) employ from March, 1924, to March 22, 1927, by virtue of said contract, worked for appellant during said time under the terms and provisions of said contract, and appellant paid appellee his wages and salaries according to the

terms thereof. Certainly this could not be true unless said original contract had in some way become the contract between appellant and appellee so that the terms thereof became equally binding upon them as the same were upon the original parties thereto."

■ Both appellants testified that they continued working without change of conditions, and neither objected to any changes in the partnership. It has been held that continuance of the employment is, as a matter of law, continuation of the old contract. 29 Tex.Jur., pages 18–19; Magnolia Compress & Warehouse Co. v. Davidson, Tex.Civ.App., 38 S.W.2d 634; Spengler v. Pitluk, Tex.Civ.App., 261 S.W.2d 470; Blaser v. Linen Service Corp. of Texas, supra. We find, here, the appellants continued their employment during most of the changes, with the same duties and responsibilities and no additional burdens. We think that each monthly pay period constituted a continuation of the original agreement. It must also be noted here that there was never any new personnel injected, but simply a diminution in the number of the original founding partners.

■ We hold, therefore, that these covenants, or non-competitive agreements, were, in effect, transferred and assigned to each successive partnership during the time appellants were employed, and that appellants, by their continuing to work and accept the benefits from their original contracted employment, without change or objection on their part, continued the original obligation in full force and effect until they, the appellants, terminated their employment. We further hold that appellee-corporation, by virtue of the various transfers and assignments of the assets of the changing co-partnership, had the legal right to seek enforcement of these non-competitive agreements. We think it would be unjust to hold otherwise, and can see no sound legal reason why a partnership should be penalized and bereft of benefits and assets of this type, merely because some of their

members drop out, or they incorporate. This agreement, like many others, is based on the consideration that the training of the employee, and placing him in contact with the customers of the employer, is a part of the consideration of the contract of employment. We do not see any good reason why a personnel change in the employer should deprive the organization of the protection that it had provided, and this is especially true where the employee continues to work and accept the benefits of such relationship without objection.

■ Appellants' Point Four charges error against the trial court in permitting appellee to file a trial amendment which, roughly speaking, contained a résumé of the changes in the plaintiff company. We do not find error in the court's permitting the amendment and the evidence thereunder, as it merely permitted appellee to set up the details and dates of the changes in the appellee company. These matters, we feel, were essential to enable the court to properly administer justice in the case at bar. Shaw v. Tyler Bank & Trust Co., Tex.Civ. App., 285 S.W.2d 782 (n. r. e.); Rule 66, Texas Rules of Civil Procedure.

Appellants' fifth point, we believe, is covered by our discussion of prior points.

■ Appellants' sixth point alleges that the non-competitive agreements were so extensive as to constitute an invalid restraint of trade, and his seventh point alleges error on the part of the trial court in modifying said agreement by the court's decree.

Modification of such covenants or agreements has long been approved by our courts. Here, the trial court limited the injunction to one type of activity, to-wit, hydrocarbon well-logging business within 200 mile radius of Midland, Texas, for a term of five years. This is a considerable shrinkage of the original non-competitive agreement and, we think, under the circumstances, reasonable. The original agreements prohibited appellants from any type of activity engaged in or contemplated by the employer or any company affiliated with it, and extended over all of the United States, its territories and possessions, and any foreign country where employer might be operating.

■ Of course trial courts have considerable discretion in granting injunctions, and, in cases like this, can impose what they consider to be reasonable terms. McAnally v. Person, Tex.Civ.App., 57 S.W.2d 945 (wr. ref.); Burroughs Adding Machine Co. v. Chollar, Tex.Civ.App., 79 S.W.2d 344; Grace v. Orkin Exterminating Co., Inc., Tex.Civ.App., 255 S.W.2d 279 (n. r. e.); Lewis v. Krueger, Hutchinson and Overton Clinic, 153 Tex. 363, 269 S.W.2d 798.

Appellants' last point, we believe, has been covered by the above discussion and authorities cited. The language of the authorities cited above clearly points up the authority of the trial court in modifying the terms of an agreement in accordance with equity and equitable principles, when he issues his injunction.

Appellants' points are all, therefore, overruled, and the decision of the trial court affirmed.

HAMILTON, C. J., not participating.