Garry W. FENNO, M.D., Appellant,

v.

Russell L. JACOBE, M.D., Appellee.

No. 01–82–00580–CV.

Court of Appeals of Texas, Houston (1 Dist.).

July 7, 1983.

Rehearing Denied Aug. 4, 1983.

Roland Darby, Houston, for appellant.
Michael Pullara, Houston, for appellee.

Before COHEN, SMITH and BASS, JJ.

OPINION

COHEN, Justice.

Appellee, a physician specializing in ear, nose and throat, entered an employment contract with Dr. D.J. Durcan, for a "maximum" term of one year, January 7, 1973, to January 7, 1974. Appellee's "regular" compensation was set by the contract at $2,000 per month, plus "additional" compensation of one-half of cash proceeds earned by his labor in excess of $4,000 each month. During the contract term, appellant and Dr. Durcan formed a partnership that assumed

liability for appellee's employment contract. At the end of the one-year term, appellee continued his employment with the partnership, performing the same duties and being paid the "regular" compensation of $2,000 per month. The parties were simultaneously negotiating a partnership interest for appellee; however, no agreement was ever reached, in part because the partnership had cash flow problems. The cash flow problem made appellee realize that he would have to delay receiving any part of his "additional", i.e., percentage compensation. Nevertheless, the parties continued the employment relation for a second full year, i.e., all of 1974, at the end of which appellee resigned and demanded payment for all of his "additional" compensation, that is, one-half the proceeds attributable to his labor in excess of $4,000 per month, which was earned during the second year of the contract, 1974. Appellant and Dr. Durcan refused payment, claiming that the contract ended after the "maximum" term of one year and was never renewed. They claimed that appellee's employment thereafter was not governed by the written contract, but was simply employment at will, at a salary of $2,000 per month, which had been fully paid. Appellee sued appellant and Durcan for cash proceeds they received in excess of $4,000 per month earned by him during 1974. He won a partial summary judgment against appellant and Durcan on the issue of liability. The damage issue was tried by jury resulting in a judgment for damages against appellant and Durcan in the amount of $39,769.94, plus attorney's fees of $19,000, and prejudgment interest of $17,219.82. Only Dr. Fenno has appealed.

Appellant argues that the trial court erred in granting an interlocutory partial summary judgment holding that the contract for the year 1973 was extended by implication, as a matter of law, for the year 1974. Appellant's major argument is that the contract language creates a fact issue which prevents a summary judgment, because it negates any extension by providing that, "the term of employment under this agreement shall be for a maximum of one

year, ...". Appellant also relies on conclusory affidavits of Drs. Fenno and Durcan that the contract was for one year only, and nothing was owed to appellee thereafter. Such affidavits are mere conclusions which add nothing to the summary judgment proof. According to appellant, the "maximum" term of one year stated in the employment contract is a "fact" inconsistent with the trial court's holding that the parties extended the contract by implied agreement, as a matter of law.

Both parties rely on the same authorities. These are *Thames v. Rotary Engineering Company,* 315 S.W.2d 589, 591 (Tex.Civ. App.—El Paso, 1958, writ ref'd n.r.e.); *Magnolia Compress & Warehouse Co. v. Davidson,* 38 S.W.2d 634 (Tex.Civ.App.— Galveston 1931, no writ); *Accidental Oil Mills v. Tomlinson,* 8 S.W.2d 558 (Tex.Civ. App.—Austin 1928, error ref'd); *Houston Ice & Brewing Co. v. Nicolini,* 96 S.W. 84, 91 (Tex.Civ.App.—1906, error ref'd); 56 C.J.S. *Master & Servant* § 10, p. 82 (1948).

All of these authorities held that employment contracts were properly extended by implication in similar circumstances, but none were summary judgment cases, as is the instant case.

In *Magnolia Compress & Warehouse Co. v. Davidson,* the employee won a judgment for damages on a written employment contract with a one-year term. At the end of the year he continued to work, but was assigned greater pay and responsibilities. He was discharged when business turned bad, some nine months after the written contract term expired. He sued for his salary for the remaining three months, alleging that the contract had been renewed by implication for another one-year term. The appellant-employer complained that the court erred by submitting a jury issue on whether there was an implied contract with Mr. Davidson to employ him for another year at the new salary. The court stated:

> We think the submission of any part of the inquiry was a submission of a question of law and unnecessarily submitted. The undisputed facts show that appellee was by the permission and acquiescence of ... appellant (allowed) to continue his usual services during the month of August, 1928, after the expiration of the period of the first contract at the same salary as before, without entering into any new contract. We think *such facts show a continuation of the original contract as a matter of law.* 38 S.W.2d at 637. (emphasis supplied).

In 56 C.J.S. 82–83 it is stated:

> As a general rule, ... when one enters into the service of another for a definite period, and continues in the employment after the expiration of that period without any new contract, the presumption is that the employment is continued on the terms of the original contract, and provisions and restrictions forming essential parts of the contract ... continue in force.

In *Thames v. Rotary Engineering Company, supra* at 591, the court said:

> It has been held that continuance of the employment is, as a matter of law, continuation of the old contract.... We find, here, the appellants continued their employment during most of the changes, with the same duties and responsibilities and no additional burdens. We think that each monthly pay period constituted a continuation of the original agreement.... We hold, therefore, ... that appellants by their continuing to work and accept the benefits from their original contracted employment without change or objection on their part, continued the original obligation in full force and effect until they ... terminated their employment. (emphasis supplied).

The question presented is, can a summary judgment in these circumstances be supported by the presumption. We hold that it can be. Nothing in this record rebuts the presumption that these parties intended to continue the same compensation formula after the contract expired at the end of the first year. Appellant asserts, in effect, that after January 7, 1974, appellee's compensation was substantially reduced to a salary of $2,000 per month, thereby de-

priving appellee of the percentage interest in earnings he had enjoyed, in addition to the salary, during the first year of the contract. Yet appellant presented no evidence that appellee was ever informed of such a change or consented to it, or even that it was discussed. Appellant presented nothing to rebut the presumption that the contract continued. Appellee's summary judgment proof included his affidavit that no one ever told him of any change in his compensation after the original contract term expired. This was never denied in any of appellant's summary judgment evidence. It is thus undisputed that appellee continued to work for appellant, with appellant's consent and acquiescence, performing the same duties as a physician specializing in ear, nose and throat ailments, after the expiration of a contract term, without entering any new contract. Whatever secret intent appellant may have had to terminate the written contract, and thereby reduce appellee's compensation, was never conveyed to appellee, according to the uncontradicted summary judgment proof. "A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, ... if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex.R.Civ.Pro. 166–A. Thus, the presumption of law that the contract continued is supported by appellee's uncontradicted summary judgment evidence. No more is required. *Page v. Pan American Petroleum Corp.*, 381 S.W.2d 949, 954 (Tex. Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.) cert. den. 382 U.S. 820, 86 S.Ct. 45, 15 L.Ed.2d 66 (1965). Point of error two is overruled.

Appellant next argues that the court erred in entering an order requiring him to pay appellee a cashier's check in the amount of $500.00 on a date prior to trial for sanctions in the form of attorney's fees. The trial court had previously entered its order deeming admitted certain requests for admissions which appellant had not answered. Appellant requested that the court "withdraw its previous order and in its stead,

impose a penalty against (appellant) in response to (appellee's) motion for sanctions and award attorney's fees of $500 (against appellant) and have same taxed as costs." Appellant was asking the court to withdraw its prior order deeming the admissions requests admitted and permit him to file responses denying several of the requests. Thus, appellant's request to the trial court to fine him $500 was a way of making appellee whole for fees incurred in obtaining the order deeming the requests admitted, and also was an inducement to the trial court to withdraw the order and permit several requests to be denied by a late filing. The court granted the request but, rather than taxing the $500 as costs, ordered that $500 be paid by cashier's check to appellee's attorney by 9:00 a.m. on December 21, 1981. Appellant complied with the order.

Appellant now complains that the order was improper and unauthorized by Tex.R. Civ.P. 167, 168, 169, 170 and 215a. He cites no case authority.

We hold that the error, if any, has been waived by failure to object to it in the trial court. An objection is normally required to any action of the trial court before it can be grounds for relief on appeal. *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1965); *State v. Wilemon*, 393 S.W.2d 816 (Tex.1965); *Hammon v. Texas and New Orleans Railroad Company*, 382 S.W.2d 155, 162 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.). Any error in the court's order could have been corrected by timely objection since the order was an interlocutory discovery order easily subject to amendment. Appellant's failure to object under these circumstances waives the error. Point of error one is overruled.

In point of error three, appellant complains that the trial court erred in refusing to allow him to withdraw his announcement of ready and in not allowing a continuance of the trial.

While the jury was deliberating, appellee moved for a trial amendment permitting him to increase the amount of attorney's

fees requested. His pleading had asked for $10,000 in attorney's fees, but the evidence he presented was that he was entitled to over $19,000 in attorney's fees. The court deferred action until after the jury returned its verdict, at which time plaintiff filed a written motion for trial amendment, which appellant opposed. Appellant requested that the trial amendment be denied or that he be allowed to withdraw his announcement of ready and have a continuance. The court allowed the trial amendment and denied all relief sought by appellant.

■ The controlling authority is Tex.R. Civ.P. 66, which gives the judge broad discretion, subject to review only for abuse, in deciding whether to grant a trial amendment. Rule 66 provides that the court shall freely permit amendment of the pleadings when presentation of the merits will be served thereby and the objecting party fails to satisfy the court that the surprise caused by such an amendment would prejudice him in maintaining his own action or defense on the merits. *Pickens v. Baker*, 588 S.W.2d 406, 410 (Tex.Civ.App.—Amarillo 1974, no writ); *H.O. Dyer, Inc. v. Steele*, 489 S.W.2d 686, 688 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ).

■ The trial judge was apparently not persuaded by appellant's claim of surprise. Long before trial, in his motion for summary judgment, appellee's counsel stated in an affidavit that his attorney's fees exceeded $11,000. This was before the fees for trial preparations and conduct of the trial were included. Appellant never objected to the testimony by appellee's attorney as being unsupported by pleadings or creating surprise. On the contrary, appellant's attorney conducted a thorough cross-examination of appellee's attorney on the issue. Jury argument by both attorneys for the appellee requested attorney's fees in excess of $19,000, all without objection from the appellant. There was no objection to the court's charge or request for any limiting instruction to the jury regarding attorney's fees. This is not a case in which appellant was misled to his prejudice by coming to trial prepared to agree to attorney's fees of $10,000, as pleaded, and was then unprepared to cross-examine and defend against a claim of twice that amount. Appellant cross-examined and defended vigorously against the claim, never mentioning surprise or prejudice.

Appellant cites seven cases, none of which reversed a judgment due to abuse of discretion in allowing a trial amendment. Each case affirmed a judgment. In six cases, the appellate court affirmed the refusal of a trial amendment, and in one, the appellate court affirmed a decision allowing the trial amendment. However, appellant is not asking us to *affirm* the trial court's exercise of discretion, but to *reverse* because of abuse of discretion. That is a much heavier burden. He has cited no case in which an appellate court held it was an abuse of the trial court's discretion to permit a trial amendment and refuse the opponent's request for withdrawal of the announcement of ready, or for a continuance. We hold that the issue was tried by consent, that appellant was not prejudiced, and that the court did not abuse its discretion in permitting the trial amendment. *LaMarque Independent Sch. Dist. v. Thompson*, 580 S.W.2d 670, 672 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ.); *Putter v. Anderson*, 601 S.W.2d 73, 76 (Tex.Civ.App. —Dallas 1980, writ ref'd n.r.e.); *American Produce and Vegetable Co. v. J.D. Campisi's Italian Restaurant*, 533 S.W.2d 380, 386 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.). Point of error three is overruled.

Appellant's final complaint is that the trial court erred in rendering judgment against him for pre-judgment interest.

■ Texas courts have permitted an award of pre-judgment interest in many different situations. In *McDaniel v. Tucker*, 520 S.W.2d 543, 549 (Tex.Civ.App.—Corpus Christi 1975, no writ) the court stated:

The test is whether or not the *measure* of the recovery or claim, *and not necessarily the amount of damages,* is fixed by the conditions existing at the time the injury arose or was inflicted. If the *measure* is

determinable at the time of the *injury,* interest is properly awarded from the time of the injury and is added by the court to the amount of the damages in rendering judgment. (emphasis supplied).

This standard allows pre-judgment interest on unliquidated damage claims based upon quantum meruit, *Davidson v. Clearman,* 391 S.W.2d 48, 51 (Tex.1965); *Black Lake Pipe Company v. Union Construction Company,* 538 S.W.2d 80 (Tex.1976); conversion, *Texas Company v. State,* 154 Tex. 494, 281 S.W.2d 83 (1955); and negligent damage to produce, *N.O.R. Co. v. Dingfelder and Balish,* 134 Tex. 156, 133 S.W.2d 967 (1939). Pre-judgment interest has even been allowed in a products liability case where a racehorse died from food poisoning after eating spoiled animal feed. *Burrus Feed Mills, Inc. v. Reed,* 391 S.W.2d 121 (Tex.Civ.App.—Amarillo 1965, no writ).

■ The measure of damages in this case was fixed by the employment contract at the time the injury arose. The contract specified that appellee would receive for services as appellant's employee a base salary of $2,000 a month, plus 50% of fees in excess of $4,000 each month attributable to his services. Pre-judgment interest was allowed in similar circumstances in *G & W Marine v. Morris,* 471 S.W.2d 644 (Tex.Civ. App.—Beaumont 1971, no writ) and *Haggar Co. v. Rutkiewicz,* 405 S.W.2d 462 (Tex.Civ. App.—Waco 1966, writ ref'd n.r.e.).

Appellant relies on *Okon v. Levy,* 612 S.W.2d 938, 94 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.), and *Hairston v. Richie,* 338 S.W.2d 263 (Tex.Civ.App.—Fort Worth 1960, no writ).

*Okon* was a suit for specific performance between co-tenants having undivided interests in real estate. The court noted that the failure to close on a proposed sale of one co-tenant's interest to the other was due to the fault of both parties. Furthermore, the court stated:

> The Levys were co-tenants with the Okons and continued to own their undivided interest in the property even though the Okons were in actual possession of the property. In an action for specific performance where the seller retains his interest in the property until judgment, he is not entitled to pre-judgment interest. 612 S.W.2d at 942–943.

*Okon* is distinguishable because in this case there is no indication that the liability imposed upon appellant is in any way due to the fault of the appellee. Furthermore, unlike *Okon,* it is not a suit for specific performance and, perhaps more importantly, appellee was not a co-tenant with appellant, did not own an undivided interest in any property and did not retain an ownership interest in any property until judgment. This is a suit for breach of contract, not for compensation for property owned.

We believe that *Hairston, supra,* is also distinguishable. *Hairston* was a partnership accounting case in which the plaintiff asserted an ownership interest in partnership property. The court stated:

> Another point is that it was error to render judgment for interest from October 31, 1956, the date the partnership was terminated, because there was neither pleading nor proof to sustain it. We think this point is well taken.... the general rule seems to be that no interest is allowed on partnership accounts prior to the time when an accounting is had and the balance is ascertained, unless an accounting has been delayed through misconduct or fraud. 338 S.W.2d 268.

Thus, like the *Okon* case, the opinion in *Hairston* rests in substantial part upon the fact that the parties to the lawsuit were seeking to divide property jointly owned. This distinguishes *Hairston* from the instant case, which is not a suit involving ownership of property but a breach of contract. Even without such a distinction, we believe the better reasoned cases permit recovery of pre-judgment interest in circumstances similar to those in the instant case. Point of error four is overruled.

The judgment is affirmed.