**SOUTHWEST AIRLINES CO., Appellant,**

v.

**J.J. JAEGER, Appellee.**

No. 08–93–00067–CV.

Court of Appeals of Texas,
El Paso.

Nov. 24, 1993.

Rehearing Overruled Jan. 6, 1994.

John Chaussee, Dallas, for appellant.

C.H. Hal Brockett, Jr., Brockett & Lindemood, Midland, for appellee.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a judgment entered against Southwest Airlines Co., Appellant, for the sum of $108,068.89, plus interest and attorney's fees following a jury trial of a breach of employment contract case. In eleven points of error, Appellant attacks the admission and sufficiency of evidence establishing that Appellee was a party to the written employment contract, the amount and measure of damages and interest award-ed to Appellee, and the trial court's failure to dismiss the case for want of prosecution. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

In 1982, J.J. Jaeger, Appellee, was employed as a provisioning agent by Southwest Airlines.[1] At the time of his employment, a contract between Southwest Airlines and the International Association of Machinists and Aerospace Workers (IAM) governed the employment of customer and fleet service employees, including provisioning agents.

In 1984, Appellee was promoted to "Chief Operations Agent," a supervisor's position in Midland, Texas. Appellee's job title was subsequently changed to "Operations Supervisor," although the title change did not affect his classification or duties. He continued in this position until his termination in 1988.

In 1986, during the term of Appellee's employment as an operations supervisor, Southwest's operations agents, ramp agents, and provisioning agents voted to decertify their union (the IAM). This vote left these employees without a collective bargaining agreement with Southwest. Thereafter, Southwest offered a written employment contract to its operations agents, ramp agents, and provisioning agents. This contract was presented to the affected employees for a vote, and the contract was ratified. The record shows that Appellee participated in the vote to ratify the contract with Southwest Airlines.

The agreement entered into between Southwest Airlines and the above employees, also known as the "Blue Book," contained the following provisions:

### ARTICLE TWO

### SCOPE OF AGREEMENT

A. This Agreement covers all employees in the classification of ramp agent, provisioning agent, and operations agent.

. . . . .

---

1. A provisioning agent is an employee who is tasked with the responsibility of stocking bever-ages and snacks aboard the aircraft.

### ARTICLE FIVE

### CLASSIFICATIONS

. . . . .

### OPERATIONS AGENT

The work of an Operations Agent includes the functions which have been historically performed by Operations Agents at Southwest Airlines stations and includes, but is not limited to, any or all of the following:

. . . . .

### ARTICLE EIGHT

### SENIORITY

I. ... Employees while occupying supervisory positions will not be considered as working under the terms of this Agreement for the purpose of accruing seniority....

. . . . .

### ARTICLE TWENTY–FIVE

### DISCHARGE AND DISCIPLINE

A. No employee who has passed his probationary period will be disciplined to the extent of loss of pay or discharge without just cause.

. . . . .

### ARTICLE THIRTY–ONE

### DURATION AND AMENDMENTS

This Agreement ... shall remain in effect until March 1, 1989 or until amended by proper authority of the Company and receipt and notice thereof has been received by affected employees.

. . . . .

The record shows that Appellee was discharged by Southwest on May 10, 1988. Efforts at reinstatement with the company were commenced pursuant to the procedures set forth in the Blue Book. On May 17, 1990, when efforts to secure reinstatement failed, Appellee filed suit against Southwest for wrongful termination and breach of contract. The central issue in the trial court below was whether Appellee, as a chief operations agent or operations supervisor, was covered by the provisions of the Blue Book. The jury found that Appellee was covered by the agreement and that Southwest Airlines had terminated his employment without just cause.

## II. *DISCUSSION*

### A. The Employment Contract

■ In Point of Error No. One, Appellant contends that the trial court erred in admitting evidence establishing that Appellee was a party to the written employment contract between Southwest and its operations, ramp, and provisioning agents, because such evidence violates the parol evidence rule.

■ Texas adheres to the "employment at will" doctrine, which gives an employer the right to discharge an employee with or without cause unless the employee is a party to a contractual provision to the contrary. *East Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888); *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991); *Winters v. Houston Chronicle Pub. Co.,* 795 S.W.2d 723 (Tex.1990); *Casas v. Wornick Co.,* 818 S.W.2d 466, 469 (Tex.App.—Corpus Christi 1991, writ denied). Thus, in order to sustain an action for wrongful termination, the discharged employee has the burden to prove that the employment relationship was based on the existence of a contract that specified that the employment was not terminable at will. *Wal–Mart Stores, Inc. v. Coward,* 829 S.W.2d 340, 342 (Tex.App.—Beaumont 1992, writ denied); *Lee–Wright, Inc. v. Hall,* 840 S.W.2d 572 (Tex.App.—Houston [1st Dist] 1992, no writ); *Lumpkin v. H & C Communications, Inc.,* 755 S.W.2d 538, 539 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

The agreement between Appellant and certain of its employees, i.e., the Blue Book, is without question an employment contract.

The preamble to the agreement itself states that Appellant "... contracts with each one of you...." It is also not disputed that the agreement contains the discharge for cause only provision. Appellant's contention, however, is that Appellee was not among the employees covered by the Blue Book.

Appellant asserts that the provisions of the Blue Book, in particular Article Two, Scope of the Agreement, is clear and unambiguous in its description of the employees covered by the agreement: ramp agents, provisioning agents, and operations agents. The Blue Book also describes the duties and responsibilities of each of these job classifications. The position of chief operations agent or operations supervisor is not listed in the scope clause or any other clause, and the duties of this position are not described anywhere in the Blue Book. Appellant asserts that the clear and unambiguous language of the agreement establishes that Appellee was not among the employees covered by the agreement.

At trial, over Appellant's objections that testimony was in violation of the parol evidence rule, Appellee was permitted to introduce evidence to show that an operations supervisor or chief operations agent he was a party to the agreement. This evidence included Appellee's testimony as to how the Blue Book was adopted and the fact that he was given no indication that as a supervisor he was not covered under the Blue Book.

The parol evidence rule precludes consideration of extrinsic evidence to contradict, vary, or add to the terms of an unambiguous written agreement, absent fraud, accident, or mistake. *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30, 32 (1958); *NHA, Inc. v. Jones*, 500 S.W.2d 940, 944 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.). It is well established that the threshold question of whether a contract is ambiguous is a question of law for the trial court's

determination, after examining the contract as a whole in light of circumstances existing at the time the contract was signed. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). A contract is ambiguous if, after applying the rules of construction, its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393.

In construing a contract, the trial court should ascertain the objective intent of the parties as expressed in the writing itself. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex.1981). It should do this by examining the entire instrument, harmonizing and giving effect to all provisions to the extent possible so that none of the provisions will be rendered meaningless. *Coker*, 650 S.W.2d at 393. It is only after a determination by the trial court that the contract is in fact ambiguous that parol evidence becomes admissible, and then only to assist the fact finder in determining what the subjective intent of the parties was at the time they entered into the contract. *Id.*

The record shows that Article Two states that the agreement applies to ramp, provisioning, and operations agents, suggesting that supervisors are not covered under the agreement. Article Five gives a non-inclusive list of the duties of operations agents, suggesting that employees classified as operations agents may perform other duties, such as supervisory functions, as well. Article Eight states that supervisory employees are not considered as working under the agreement for seniority purposes only, suggesting that for all other purposes they are to be considered as falling under the agreement. Thus, when the entire Blue Book agreement is read as a whole, it is reasonably susceptible to more than one meaning.[2]

In light of the above, since the contract was ambiguous as to whether Appellee was

---

2. The trial court, after it had allowed Appellee to testify as to how the agreement was adopted and that he was given no indication that he was not covered by the agreement, refused to allow testimony as to the negotiations prior to the adoption of the agreement because such testimony would vary the terms of the written agreement. The

among the employees covered by the agreement, the evidence admitted was helpful to the jury in determining the subjective intent of the parties at the time of contract formation. This evidence helped to clarify and explain an essential term present in the contract, i.e., which parties were covered by the agreement. The evidence admitted did not add to the terms of the contract, since it is a reasonable interpretation of the contract as a whole that operations supervisors or chief operations agents were included within the classification of operations agents.

The admission or exclusion of evidence is a matter within the trial court's discretion. *Syndex Corp. v. Dean*, 820 S.W.2d 869, 873 (Tex.App.—Austin 1991, writ denied); *Dudley v. Humana Hosp. Corp.*, 817 S.W.2d 124, 126 (Tex.App.—Houston [14th Dist.] 1991, no writ). To obtain a reversal of a judgment based upon a trial court's decision to admit or exclude evidence, the Appellant must show:

(1) that the trial court abused its discretion in making the decision; and

(2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment.

*Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394 (Tex.1989); Tex.R.App.P. 81(b). The Texas Supreme Court has recognized that it is impossible to prescribe a specific test for making the latter determination, and calls it a "judgment call entrusted to the sound discretion and good senses of the reviewing court." *Lorusso v. Members Mut. Ins. Co.*, 603 S.W.2d 818, 821 (Tex.1980). This judgment call must be made by an evaluation of the whole case. *Id.* We find that the disputed evidence did not violate the parol evidence rule, and further find that the trial court did not abuse its discretion in admitting the evidence. Accordingly, Appellant's Point of Error No. One is overruled.

In Point of Error No. Four, Appellant asserts that the trial court erred in overruling its Motion for New Trial and Mo-

court's ruling was that "Court does not find the

tion for Judgment Notwithstanding Verdict because there was no evidence or insufficient evidence to support the jury's answer to Question Number 1, which asked if the employment relationship between Appellant and Appellee was covered by a written employment agreement. Appellant contends that since the language of the Blue Book is clear and unambiguous in its coverage, evidence that tended to modify the terms of this agreement violated the parol evidence rule and could not be considered by the fact finder.

In considering a "no evidence" or legal insufficiency point, the appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Worsham Steel Co. v. Arias*, 831 S.W.2d 81 (Tex.App.—El Paso 1992, no writ). If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Neily v. Arron*, 724 S.W.2d 908 (Tex. App.—Fort Worth 1987, no writ). A "no evidence" point may be sustained only when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by the rules of law or evidence from giving weight to the evidence offered of a vital fact; (3) no more than a scintilla of evidence is offered of a vital fact; or (4) the evidence conclusively establishes the opposite of a vital fact. *Neily*, 724 S.W.2d at 913.

A factual insufficiency point requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d at 661; *Worsham Steel Co.*, 831 S.W.2d at 83. The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Carrasco v. Goatcher*, 623 S.W.2d 769 (Tex. App.—El Paso 1981, no writ). It is not

document is ambiguous."

within the province of the court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951); *Reynolds v. Kessler*, 669 S.W.2d 801, 807 (Tex.App.—El Paso 1984, no writ). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947); *Clark v. National Life & Accident Ins. Co.*, 145 Tex. 575, 200 S.W.2d 820 (1947); *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied).

■ The parol evidence rule is a rule of substantive contract law, not merely a rule of evidence. *Hubacek*, 317 S.W.2d at 32; *Pan American Bank of Brownsville v. Nowland*, 650 S.W.2d 879, 884 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). As such, evidence admitted in violation of the parol evidence rule is incompetent and without any probative force. *Hubacek*, 317 S.W.2d at 31. This, Appellant asserts, requires a finding that there is no evidence to support the jury's answer to Question Number 1, since all evidence that Appellee was covered under the agreement violates the parol evidence rule. As discussed above, the evidence does not violate the parol evidence rule; therefore, Appellant's no evidence claim must fail.

Appellant's factual insufficiency claim likewise falls short. When all of the evidence is examined, it is clear that there was sufficient competent evidence before the jury that Appellee was included within the classification of operations agent. The record indicates that Appellee testified that he performed all of the duties enumerated in Article Five of the Blue Book in addition to his supervisory duties. This evidence supports Appellee's contention that the language of Article Five stating that the duties of an operations agent **include, but are not limited to,** the enumerated duties, include within that classification the position of chief operations agent or operations supervisor.

The record establishes that Appellee was paid according to the schedule in the Blue Book, his vacation and sick leave were governed by the Blue Book, and his overtime work and pay were likewise governed by the Blue Book. Further, the record shows that Appellant posted a memo addressed to all employees that listed the holiday schedule for all employees not covered by collective bargaining agreements. Appellee testified that, as a supervisor, he did not enjoy the benefit of the posted holidays. To the contrary, he was required to bid for his days off according to the Blue Book along with the rest of the employees otherwise covered by the agreement. The Regional Director for Ground Operations for Southwest, the same person who discharged Appellee, also testified that Appellee was required to bid for his days off, rather than receiving those holidays listed in the memo reserved for non-contract employees.

We have examined all of the evidence in the instant case and find sufficient competent evidence of probative force to support the jury's finding to Question Number 1. We further hold that the finding in question is not so against the great weight and preponderance of the evidence as to be manifestly unjust.

■ A refusal to grant a motion for a new trial is tested by the abuse of discretion standard. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983); *Eikenhorst v. Eikenhorst*, 746 S.W.2d 882, 886 (Tex.App.—Houston [1st Dist.] 1988, no writ). An appellate court should reverse a trial court for abuse of discretion only when "after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable." *Simon v. York Crane & Rigging Co., Inc.*, 739 S.W.2d 793, 795 (Tex.1987). Since we have found that sufficient competent evidence was before the jury to support its answer to Question 1, we find that the trial court did not abuse its discretion in overruling Appellant's motion for new trial and motion for judgment notwithstanding the verdict. Accordingly, Appellant's Point of Error No. Four is overruled.

In Points of Error Nos. Two and Three, Appellant complains of the trial court's submission of Question Number 1 to the jury and the refusal to submit Requested Special Issue Three.

■ In Point of Error No. Three, Appellant asserts that the trial court erred in submitting Question Number 1 to the jury. Submission of questions to the jury is a matter within the discretion of the trial court. *See* TEX.R.CIV.P. 277; *Texas Dept. of Human Services v. E.B.*, 802 S.W.2d 647–649 (Tex. 1990); *Lee–Wright, Inc.*, 840 S.W.2d at 577. This discretion is limited by requiring the court to submit the controlling questions raised by the pleadings and the evidence. *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 823 (Tex.1985); *Lee–Wright, Inc.*, 840 S.W.2d at 579.

■ The record shows that Appellee plead the existence of a written employment contract and that he was covered by the agreement, and further shows the admission of competent evidence at the trial of this contract. Thus, we find the trial court properly submitted Question Number 1 because it was a controlling issue in the instant case. We overrule Point of Error No. Three.

■ In Point of Error No. Two, Appellant asserts that the trial court erred in refusing to submit its Requested Special Issue Three to the jury. This requested jury question inquired whether Appellee was an employee at will. We note that although this requested jury question is included in the transcript, the record does not indicate that Appellant secured a ruling on said request. The requested question does not appear in the charge as submitted to the jury, but the trial court did not sign the request as "refused." TEX.R.CIV.P. 376. Therefore, Appellant has not properly preserved this point of error for appeal.

■ Even if Appellant had properly preserved this point of error for appeal, we find that the trial court did not err in refusing to submit Appellant's Requested Special Issue Three to the jury. This question is of the nature of an inferential rebuttal to Appellee's claim that he was covered by the Blue Book agreement, since Appellee could not be both an at-will employee and be covered by the agreement. An inferential rebuttal is a defensive theory that seeks to disprove a claim or theory relied upon for recovery by proving a contrary or inconsistent position. *Select Ins. Co. v. Boucher*, 561 S.W.2d 474, 477 (Tex.1978); *Weitzul Const., Inc. v. Outdoor Environs*, 849 S.W.2d 359, 365 (Tex. App.—Dallas 1993, n.w.h.); *McDonald v. Brennan*, 704 S.W.2d 136, 138 (Tex.App.—El Paso 1986, writ ref'd n.r.e.). Rule 277 of the Texas Rules of Civil Procedure prohibits the submission of inferential rebuttal questions in the charge. *See* TEX.R.CIV.P. 277; *Select Ins. Co.*, 561 S.W.2d at 476–477; *Weitzul Const., Inc.*, 849 S.W.2d at 365; *McDonald*, 704 S.W.2d at 138. Inferential rebuttal issues are only properly submitted to the jury in instruction form. *Id.*

■ Additionally, Appellant's Requested Special Issue Three is not in substantially correct wording, as required by Rule 278. *See* TEX.R.CIV.P. 278. This requested question reads:

> At the time of the termination of his employment, do you find that J.J. Jaeger was employed by Southwest Airlines only for an indefinite period of time at the will of Southwest?

> We, the Jury, answer the above issue

Appellant's Requested Special Issue Three incorrectly places the burden of proof, as the general instructions given to the jury require that a yes/no question be answered "yes" only if based on a preponderance of the evidence. Appellant does not have the burden to prove by a preponderance of the evidence that Appellee was an at-will employee in order to defeat Appellee's claim; the burden is on Appellee to prove by a preponderance of the evidence that his employment was governed by an employment contract.

For the above reasons, we find the trial court did not err in refusing to submit Appel-

lant's Requested Special Issue Three. Accordingly, Appellant's Point of Error No. Two is overruled.

## B. Damages

 The record shows that the trial court permitted Appellee to testify, over the objections of Appellant, to his earnings for the period of time from March 1, 1989, the date the Blue Book agreement was to terminate, to the date of trial. In the charge that was submitted to the jury, Question Number 4 asked the jury to determine damages from the date of Appellee's discharge, May 10, 1988, to the date of trial. Question Number 5 asked the jury to figure damages only from the date of discharge to March 1, 1989. The jury answered Question Number 4 in the amount of $108,068.89 and Question Number 5 in the amount of $6,711.97. Based upon these answers, the trial court rendered judgment in favor of Appellee and assessed damages in the amount of $108,068.89, plus interest and attorneys fees.

In Point of Error No. Five, Appellant asserts that the trial court abused its discretion in admitting the evidence concerning damages that accrued after March 1, 1989, the date the Blue Book Agreement was to terminate. Appellant contends that even if Appellee was covered by the Blue Book agreement, this testimony constituted evidence of improper post-contractual damages, and that the evidence probably caused the rendition of an improper judgment.

It is well settled in Texas that a continuance of the employment relationship in accordance with the terms of a written employment contract after the contract has expired by lapse of time is a continuance of the old employment contract as a matter of law. *Fenno v. Jacobe*, 657 S.W.2d 844, 846 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Thames v. Rotary Engineering Co.*, 315 S.W.2d 589, 591 (Tex.Civ.App.—El Paso 1958, writ ref'd n.r.e.); *Houston Ice & Brewing Co. v. Nicolini*, 96 S.W. 84, 91 (Tex.Civ. App.—1906, error ref'd). The record in this case indicates that after March 1, 1989 the employment conditions of the covered employees were governed by the Blue Book agreement. Thus, the Blue Book agreement was extended as a matter of law and continued to bind Appellant and the covered employees after March 1, 1989.

The fact that Appellee was discharged before March 1, 1989 does not preclude him from accruing damages under the contract as extended by law. The record demonstrates that but for his wrongful termination, Appellee would have continued his employment with Appellant. This continued employment would have been governed by the Blue Book agreement.[3] Therefore, we find that evidence of Appellee's damages that accrued after March 1, 1989 was not impermissible post-contractual damages evidence.

On May 17, 1990, the fleet service employees of Appellant negotiated and adopted a new employment contract (the ROPA agreement), which was in effect until the date of trial. The record shows that the ROPA agreement was substantially the same as the prior Blue Book agreement in all material aspects. Since the Blue Book agreement was extended by law after March 1, 1989, the ROPA agreement was in effect an amended version of the Blue Book, as contemplated by Article 31 of the Blue Book.[4] Consequently,

---

3. The concurring opinion, while correctly stating that the burden of proof was or should have been on Appellee to prove by a preponderance of the evidence that he would have continued in Appellant's employ past the March 1, 1989 expiration date, has ignored Appellee's testimony that his goal or objective in seeking arbitration proceedings was to get his job back, that he wanted to keep his job, that he sent correspondence to Herb Kelleher, the President of Southwest Airlines, requesting his job back, that he never contemplated any other career or job other than

with Southwest Airlines. Thus, the jury did consider evidence that Appellee, if he had not been wrongfully terminated, would have continued working for Appellant past the contract expiration date.

4. Article 31 of the Blue Book provides in pertinent part as follows:

 DURATION AND AMENDMENTS
 This Agreement ... shall remain in effect until March 1, 1989 or until amended by proper

Appellee was entitled to the benefits of the ROPA agreement in the same manner that he was entitled to the benefits of the extended Blue Book agreement.

Having determined that Appellee was entitled to the benefits of the extended Blue Book and ROPA agreements, we find that the trial court did not abuse its discretion in admitting evidence of Appellee's damages after March 1, 1989. Accordingly, Appellant's Point of Error No. Five is overruled.

In Point of Error No. Six, Appellant asserts that the trial court erred in overruling its Motion for Judgment Notwithstanding Verdict and Motion for New Trial because there was no evidence or insufficient evidence to support the jury's finding of $108,068.89 in actual damages. Appellant's argument assumes that the evidence of Appellee's damages that accrued after March 1, 1989 was improper post-contractual damages and is not competent to support the jury's answer to Question Number 4. As discussed above, we find that the evidence of Appellee's damages after March 1, 1989 was permissible evidence of his actual damages.

■ After examining the record we find sufficient evidence to support the jury's finding that Appellee suffered $108,068.89 in actual damages from the date of his discharge to the date of trial as a result of his wrongful termination. Thus, we find that the trial court did not err in overruling Appellant's Motion for Judgment Notwithstanding Verdict and Motion for New Trial based on no evidence or insufficient evidence to support this award by the jury. Accordingly, Point of Error No. Six is overruled.

In Point of Error No. Seven, Appellant complains of the trial court's refusal to submit to the jury Requested Instruction No. 5, which instructed the jury that the employment contract between Appellant and Appellee would have expired on March 1, 1989, and that the correct measure of damages would

authority of the Company and receipt and notice thereof has been received by affected em-

be the present cash value of the contract to Appellee from the date of termination through March 1, 1989.

We again note that although this requested instruction does not appear in the charge as submitted to the jury, the record does not indicate that Appellant secured a ruling on the request. This requested instruction is included in the transcript, but it is not signed by the trial court as "refused." Therefore, Appellant has not properly preserved this point of error for appeal.

■ Even if Appellant had properly preserved this point of error, we find that the trial court did not err in refusing to submit the requested instruction. Texas Rule of Civil Procedure 277 provides that "The court shall submit such instructions and definitions as shall be proper to enable the jury to return a verdict." TEX.R.CIV.P. 277. A trial court has broad discretion in implementing this rule, and the refusal to submit requested instructions will be upheld unless the court abused its discretion. *Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 836 (Tex.1986), *Riggs v. Sentry Ins.*, 821 S.W.2d 701, 704–05 (Tex.App.—Houston [14th Dist.] 1991, writ denied). An explanatory instruction is proper when it is a correct statement of the law as applicable to the facts. *Riggs*, 821 S.W.2d at 704–05.

As stated above, the Blue Book contract was extended as a matter of law beyond March 1, 1989, so Appellant's Requested Instruction No. 5 is not a correct statement of the law as related to the facts of the present case. We find that the trial court did not abuse its discretion in refusing this instruction, and overrule Point of Error No. Seven.

■ In Point of Error No. Eight, Appellant asserts that the trial court erred in submitting Question Number 4 to the jury because it inaccurately reflects the measure of damages for breach of a written employment contract. Question Number 4 and the accompanying instruction read as follows:

ployees.

In answering Question's [sic] Number 4 and 5, you are instructed as follows:

An employee who has been wrongfully terminated from employment, and seeks to recover damages as a result, cannot recover for losses which in the exercise of reasonable diligence he should have been able to earn through other employment.

### QUESTION NUMBER 4

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiff, J.J. Jaeger, for his damages, if any, that resulted from his discharge by Defendant?

Answer separately in dollars and cents, if any, for each of the following elements of damages.

(a) Loss of earnings from the date of the termination of Plaintiff's employment to the present.

ANSWER: _____

(b) Loss of employee benefits (other than earnings) from the date of the termination of Plaintiff's employment to the present.

ANSWER: _____

(c) Loss of earnings that in reasonable probability Plaintiff will suffer in the future.

ANSWER: _____

(d) Loss of employee benefits (other than earnings) that in reasonable probability Plaintiff will suffer in the future.

ANSWER: _____

The jury answered part (a) $103,068.89 and part (b) $5,000.00. Both (c) and (d) were answered –0–.

Appellant correctly points out that the measure of damages for wrongful discharge of an employee is the present cash value of the contract if it had not been breached, less any amounts that he or she should, in the exercise of reasonable diligence, be able to earn through other employment. *Gulf Con-*

*sol. Int'l Inc. v. Murphy,* 658 S.W.2d 565, 566 (Tex.1983); *Lee–Wright, Inc.,* 840 S.W.2d at 581. We find that Question Number 4, coupled with the accompanying instruction, accurately requests the jury to calculate this amount.

As noted above, the Blue Book contract was extended by law beyond March 1, 1989 and was in effect, through the amended ROPA version, at the date of trial. But for his wrongful termination, Appellee would have collected wages pursuant to the contract up to the date of trial. The trial court did not err in submitting Question Number 4 to the jury. Accordingly, Appellant's Point of Error No. Eight is overruled.

In Point of Error No. Nine, Appellant asserts that the trial court erred in overruling Appellant's Motion for Judgment Notwithstanding Verdict and Motion to Disregard Special Issue No. 4 because Question Number 4 is not the proper measure of damages in a breach of written employment contract case. Appellant contends that, as a matter of law, Question Number 5, which was also submitted to and answered by the jury, is the correct measure of damages. Jury Question Number 5 read as follows:

### QUESTION NUMBER 5

What sum of money, if any, do you find to be the present cash value of the employment agreement to Plaintiff from the date of the termination of his employment on May 10, 1988, through March 1, 1989?

In calculating the amount, if any, in Question Number 5, you should reduce any such amount by the amount of money, if any, that Plaintiff, in the exercise of reasonable diligence should have been able to earn through other employment.

Answer in dollars and cents, if any.

ANSWER: _____

Question Number 5 would have been the proper measure of damages had the Blue Book agreement not been extended beyond March 1, 1989 as a matter of law. The trial

court entered a judgment incorporating the jury's answer to Question Number 4, which was the proper measure of damages; thus rendering the jury's answer to Question Number 5 immaterial. We find that the trial court did not err in refusing Appellant's Motion for Judgment Notwithstanding Verdict and Motion to Disregard Special Issue No. 4, and overrule Point of Error No. Nine.[5]

## C. Motions to Dismiss for Want of Prosecution

 The record shows that Appellee filed suit on May 17, 1990. Appellant filed its answer on August 3, 1990. During approximately the next 21 months, there was no action taken in the case by either party. On April 7, 1992, the case was set for trial on May 27, 1992. Appellant's first Motion to Dismiss for Want of Prosecution was filed on April 16, 1992, after the case had been set for trial. This motion was based on Rule 2 of the Local Rules of the Seventh Administrative Judicial District of Texas, entitled "Dismissal Docket," which reads:

> At least once each year, . . . each civil case, other than divorce cases, which has been on file more than one year, shall be set for hearing for all parties to show cause why same should not be dismissed for want of prosecution; and without good cause shown at or before such hearing such cases shall be dismissed by the court for want of prosecution without further notice. . . .

The hearing was set for May 20, 1992 at 1:00 p.m..

Appellee did not appear at the hearing, but he filed a response to the motion on the morning of May 20. The trial court did not rule on Appellant's motion at the hearing.

In light of Appellee's failure to appear at the May 21 hearing, Appellant filed a second Motion to Dismiss for Want of Prosecution,

this time pursuant to Texas Rule of Civil Procedure 165a. Rule 165a states, in pertinent part:

> **1. Failure to Appear.** A case may be dismissed for want of prosecution on failure of any party seeking affirmative relief to appear for any hearing or trial of which the party had notice. . . . At the dismissal hearing, the court shall dismiss for want of prosecution unless there is good cause for the case to be maintained on the docket. . . .

TEX.R.CIV.P. 165a. The trial court denied both motions for dismissal and reset the case for trial on July 20, 1992.

 A trial court has judicial discretion in dismissing a suit for want of prosecution; while it is not an unbridled discretion, the trial court's action in sustaining or refusing to sustain a motion to dismiss may be reversed only on a showing of clear abuse of such discretion. *Bevil v. Johnson,* 157 Tex. 621, 307 S.W.2d 85 (1957); *Brown v. Prairie View A & M Univ.,* 630 S.W.2d 405, 412 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). To determine an abuse of discretion, this Court must decide whether the trial court acted without reference to any guiding rules and principles. *Ellmossallamy v. Huntsman,* 830 S.W.2d 299, 300 (Tex. App.—Houston [14th Dist.] 1992, no writ).

 The purpose of the Texas Rules of Civil Procedure is to "obtain a fair, just, and equitable adjudication of rights under established principles of substantive law." *See* TEX.R.CIV.P. 1; *Olin Corp. v. Coastal Water Auth.,* 849 S.W.2d 852, 858 (Tex.App.—Houston [1st Dist.] 1993, n.w.h.). A dismissal for want of prosecution disposes of a case without reaching the substantive merits of the case; therefore, a just resolution of the case generally requires trial over dismissal. *See Olin Corp.,* 849 S.W.2d at 858. We find that

---

**5.** Appellant's Points of Error Nos. Five through Nine all turn on the issue of whether the contract expired on March 1, 1989 or was extended as a matter of law. Under the facts of this case, it is clear that the contract was extended as a matter of law. Therefore, the trial court properly admit-

ted evidence of damages beyond March 1, 1989, refused Appellant's Requested Instruction No. 5, submitted Question Number 4 to the jury, and overruled Appellant's Motion for Judgment Notwithstanding Verdict, Motion for New Trial, and Motion to Disregard Special Issue No. 4.

under these guiding principles, the trial court did not abuse its discretion in overruling Appellant's motions for dismissal.

Appellant cites several cases in support of its argument that the trial court abused its discretion by overruling the motions to dismiss, in that Appellee, in response to the motions, failed to show good cause why the case should not be dismissed or that he had prosecuted the case with due diligence.[6] We find Appellant's reliance on such authorities to be misplaced insofar as authorities cited touch on appellate review of a dismissal for want of prosecution, not a review of an overruling of such a motion. Accordingly, Appellant's Point of Error No. Ten is overruled.

### D. Prejudgment Interest

■ In Point of Error No. Eleven, Appellant asserts that the trial court erred in awarding prejudgment interest for the period from December 1, 1988 until November 12, 1992, the date judgment was signed. Appellant claims that the delay of more than four years from the time Appellee was discharged until the trial was caused by Appellee, and he should not benefit from such delay by receiving prejudgment interest on the damages awarded in the judgment.

■ Prejudgment interest is authorized by statute in Texas. *See* TEX.REV.CIV.STAT. ANN. art. 5069–1.05, § 6 (Vernon Supp.1993). While the statute on its face only applies to wrongful death, personal injury, and property damage cases, the courts of Texas have extended the statute's authorization of prejudgment interest to breach of contract actions for unascertainable damages. *See Perry Roofing Co. v. Olcott,* 744 S.W.2d 929, 930–931 (Tex.1988); *Winograd v. Willis,* 789 S.W.2d 307, 312 (Tex.App.—Houston [14th

Dist.] 1990, writ denied). Damages are unascertainable in an action based on an employment contract which furnishes fringe benefits to the employee, but assigns no value to those benefits. *Winograd,* 789 S.W.2d at 312.

■ The award of prejudgment interest during periods of delay in a case is discretionary with the trial court. *See* TEX.REV. CIV.STAT.ANN. art. 5069–1.05, § 6(d); *Richter S.A. v. Bank of America Nat'l Trust and Sav.,* 939 F.2d 1176 (5th Cir.1991). The record in the present case demonstrates that Appellee spent more than a year trying to gain reinstatement with Appellant. He then filed suit less than one year after his reinstatement efforts failed.

In the absence of any exceptional circumstances warranting the denial of prejudgment interest, we find that the trial court did not abuse its discretion in awarding prejudgment interest of 10%, accruing six months from the date of Appellee's wrongful discharge. Accordingly, Appellant's Point of Error No. Eleven is overruled.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.

KOEHLER, Justice, concurring.

While I agree generally with the majority's overruling of Points of Error Nos. Five through Seven dealing with the awarding of damages for the period from the date of Appellee's discharge (May 10, 1988) to date of trial rather than from date of discharge to the termination date of the contract (March 1, 1989), as contended by Appellant, I would differ as to the reasoning employed to reach those results. The cases of *Fenno v. Ja-*

---

6. *Hosey v. County of Victoria,* 832 S.W.2d 701 (Tex.App.—Corpus Christi 1992, no writ) ("When court asserts its inherent power to dismiss a case, the test to be applied in determining whether the case was properly dismissed is whether the case was prosecuted with due diligence."). *City of Houston v. Thomas,* 838 S.W.2d 296, 297 (Tex.App.—Houston [1st Dist.] 1992, no writ); *City of Houston v. Robinson,* 837 S.W.2d 262, 264 (Tex.App.—Houston [1st Dist.] 1992, no writ) ("Intent to abandon is not the test when the trial court is determining whether to abandon a case for want of prosecution.").

cobe,[1] *Thames v. Rotary Engineering Co.,*[2] and *Houston Ice & Brewing Co. v. Nicolini*[3] all involved situations where the employees continued to work past the expiration dates of their employment contracts for the same employers and with the same duties. Because he was terminated almost ten months before the expiration date of the contract, this is a completely different situation. Is an employee in Appellee's shoes entitled to what amounts to a presumption that Appellant, the wrongful termination aside, would have continued Appellee in its employ past the contract's termination date? I think not.

The burden was or should have been on the Appellee to prove by a preponderance of the evidence that he would have continued in Appellant's employ past the March 1, 1989 expiration date. Appellant's (Defendant's) Requested Instruction Nos. 4 and 5, beside the fact that the error of the court, if any, in refusing to give them was not properly preserved, do not address the issue. In the much cited case of *Dixie Glass Co. v. Pollak,* 341 S.W.2d 530 (Tex.Civ.App.—Houston 1960), writ ref'd n.r.e., 162 Tex. 440, 347 S.W.2d 596 (Tex.1961), the appellee was employed by appellant under a written contract for a five-year period with the employee's option to renew the contract for three additional five-year terms, the options to be exercised six months prior to the expiration of each term. In overruling the appellant's contention that appellee could only recover damages from the date of his wrongful termination to the expiration of the first term because he had never exercised his options, the court said:

> We think the fact there were options in the contract in favor of appellee is one element to be considered by the jury in determining damages, that is, the jury could consider the probability of the exercise of the options in determining the length of the term.

*Id.* Although there are some obvious differences between *Dixie Glass* and the case under consideration (Jaeger had no option to renew for one), I would hold that there was a presumption that the employment contract terminated on its expiration date and only those employees who were still working for Appellant past that date would be entitled to the same wages and benefits but that the jury could consider evidence that Appellee if he had not been wrongfully terminated would have continued working for Appellant past the contract expiration date.

**L.S., Appellant,**

**v.**

**1.** 657 S.W.2d 844 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

**2.** 315 S.W.2d 589 (Tex.Civ.App.—El Paso 1958, writ ref'd n.r.e.).

**3.** 96 S.W. 84 (Tex.Civ.App.—1906, error ref'd).