Opinion issued January 30, 2003










In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00240-CV




ELECTRONIC BANKCARD SYSTEMS, INC. and GLENN FRANCIS,
Appellants

V.

RETRIEVER INDUSTRIES, INC. d/b/a RETRIEVER PAYMENT
SYSTEMS; RETRIEVER SALES, INC.; FIRST NATIONAL BANK OF
OMAHA d/b/a FIRST OF OMAHA MERCHANT PROCESSING; WALT L.
RAINES; and RPSI, INC., Appellees




On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 99-06816-A




MEMORANDUM OPINION
          On February 5, 1999, appellants, Electronic Bankcard Systems, Inc. (EBS), and
its owner, Glenn Francis (Francis), filed suit against appellees, Retriever Industries,
Inc. (RII), Retriever Payment Systems (RPS), Retriever Sales, Inc. (RSI), First
National Bank of Omaha (FNBO), and Walter Raines (Raines). RPSI, Inc. (RPSI)
intervened in the lawsuit as a defendant. Appellants’ suit alleged tortious interference
with business relationships, wrongful termination, and breach of contract. Appellees
filed a motion for summary judgment on all three of appellants’ claims, and the trial
court granted the motion. 
          In three issues, appellants argue that the trial court erred in granting summary
judgment on (1) appellants’ breach of contract claim because there was a question of
fact as to whether the contract was terminated for uncured default or cause; (2)
appellants’ wrongful termination claim because the finders agreement was continued
by implication; and (3) appellants’ tortious inteference claim because there was a fact
question as to when the cause of action accrued.
          We reverse in part, affirm in part, and remand this case to the trial court for
further proceedings. 
FACTS
The Finders Agreement
          In January of 1992, Francis, doing business as EBS, entered into an employee
finders agreement (Finders Agreement) with RII. Francis was to use his best efforts
to find employees to work on behalf of RSI, and provide an office for them to work
in. The employees were to sign up merchants for Visa and MasterCard services, and
sell or lease equipment for credit card processing. The credit card transactions were
to be processed by FNBO. The Finders Agreement provided that Francis would
receive a fee for all merchant applications obtained, and a residual fee for merchant
credit card transactions from merchants signed up by the employees used by Francis
and EBS. 
          The Finders Agreement was for a term of one year, but provided that the
agreement could be terminated in the event of uncured default or cause. The Finders
Agreement provided examples of conduct that would provide cause for termination. 
Some of the examples listed were (1) fraud, intentional misrepresentation, or
negligence in compiling information to be relied upon by appellees; (2) intentional
violation of the rules and regulations of MasterCard and Visa by Francis, EBS, or the
employees; and (3) vending services in competition with appellees.
          The Finders Agreement was to expire on January 16, 1993, but the parties
continued to act under the same or similar terms until early 1995. Appellants contend
that, in late 1994 and early 1995, appellees induced some of appellants’ sales
personnel to move to appellees’ office, and that appellees stopped paying appellants
the residual fees owed under the Finders Agreement. In January of 1995, Francis
received a letter from appellees advising him that the Finders Agreement would be
terminated on account of various defaults. On February 24, 1995, Francis was
advised by letter that the Finders Agreement had been terminated for cause. Francis
denies that he engaged in any activities warranting termination by either uncured
default or cause. 
The Letter of Intent
          On March 9, 1995, Francis signed a letter entitled, “letter of intent,” that had
been drafted by appellees. The letter began with the following statement: “In
accordance with our letters dated February 23, 1995 to you and your attorney, Joseph
E. Mudd, our agreement with you and EBS has been terminated.” The letter went on
to inform Francis that, although he was not entitled to compensation following his
termination, appellees were “willing to proceed with an offer” to purchase various
assets held by Francis and EBS. The letter requested that Francis and EBS have their
attorney “draft an agreement covering these points,” and to then fax the agreement
to appellees. The letter ended with the following statement: “My signatures below
indicate my unconditional acceptance and agreement with the terms and conditions
outlined above (of this ‘Letter of Intent’) for EBS and myself. I also agree to sign a
more detailed ‘Agreement’ for myself and EBS that stipulates the above terms and
conditions.”
          Appellants contend that they were merely agreeing with appellees to cooperate
in future negotiations for the assets listed in the letter, and that the letter of intent was
not meant to be a binding contract. Appellees contend that appellants are bound by
the letter of intent, and that the opening statement, which referenced the letters
informing Francis of his termination, was proof that Francis was terminated for cause
or uncured default because the first statement of the letter of intent was a binding
term of the contract.
The Indemnification Agreement
          Then, on June 14, 1995, Francis signed a document entitled “modification, hold
harmless and indemnification agreement.” The document was signed by Francis,
RPSI, and Frank Shiner, a former employee signed up by Francis. The agreement
stated that the above three parties had engaged in business transactions, and that as
a result of those transactions, various disputes had arisen. The agreement states that
the agreement is an effort to “settle all such claims and disputes.” The agreement
specified the consideration to be given by the parties and then stated the following:
Upon receipt of the funds specified in Paragraphs 1 and 2, Francis
agrees to acquit, relieve and discharge Shiner and RPS, their affiliates,
successors and assigns from any and all liability, of whatever nature,
whether in contract or other which may now or hereinafter be owing to
Francis . . . and by executing this agreement relieves Shiner, RPS, their
successors and assigns from any and all claims, causes of action or
liability which may be payable by them and accepts such sum as full and
complete satisfaction of all such amounts owing as of the date of this
Agreement . . . This paragraph specifically does not modify any residual
payments to be paid by RPS to Glenn Francis in accordance with
existing agreements between the parties.

           Appellees argue that the indemnification agreement released them from all of
appellants’ claims except claims for payments under the letter of intent. The trial
court, however, did not specifically mention the indemnification agreement as
grounds for the grant of summary judgment for appellees. 
Standard of Review
          The standards for reviewing a traditional motion for summary judgment are as
follows: (1) the movant for summary judgment has the burden of showing that there
is no genuine issue of material fact and that the movant is entitled to judgment as a
matter of law; (2) in deciding whether there is a disputed material fact issue
precluding summary judgment, evidence favorable to the nonmovant will be taken as
true; and (3) every reasonable inference must be indulged in favor of the nonmovant
and any doubts resolved in the nonmovant’s favor. Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548-49 (Tex. 1985). A defendant is entitled to summary judgment
if at least one element of each of the plaintiff’s causes of action is negated as a matter
of law. Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 476-77 (Tex.
1995). A defendant may also prevail on a motion for summary judgment by
conclusively proving all elements of an affirmative defense as a matter of law, such
that there is no genuine issue of material fact. Cathey v. Booth, 900 S.W.2d 339, 341
(Tex. 1995) (per curiam). 
          We must consider all grounds for summary judgment that the trial court rules
on, and we may consider grounds that the trial court does not rule on in the interest
of judicial economy. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex.
1996).
Breach of Contract
          In their first issue, appellants argue that the trial court erred in granting
summary judgment for appellees on appellants’ breach of contract claim because
there was a fact question as to whether appellees had the right to terminate the
Finders Agreement for uncured default or cause. The contract provided that
appellants were entitled to residual fees unless the Finders Agreement was terminated
by uncured default or cause. Appellants’ breach of contract claim was based upon
unpaid residual fees. The trial court’s summary judgment order, with respect to the
breach of contract claim, stated that the “contracts and agreements between the parties
are unambiguous and demonstrate that the Finders Agreement was terminated on
account of uncured default or, alternatively, for cause.”
          If there was a genuine issue of material fact as to whether the appellees were
entitled to terminate the Finders Agreement for uncured default or cause, then it was
an issue that should have been decided by a trier of fact. Nixon, 690 S.W.2d at 548-49. Appellants denied in their response to appellees motion for summary judgment
that there was either uncured default or cause for the termination of the Finders
Agreement. Appellees argue that there is no fact dispute because appellants signed
the letter of intent in March of 1995, which stated “in accordance with our letters
dated February 23, 1995 to you and your attorney . . . our agreement with you and
EBS has been terminated.” Appellees contend that the letter of intent was a binding
contract, and that the first statement was a term of the contract that appellants agreed
to. Appellants argue that the letter of intent was not a contract, and that the quoted
statement was “an initial, arrogant comment about the agreement being terminated,”
and was not a term of any agreement. 
          We first decide if the letter of intent was a binding contract as to the proposed
terms as a matter of law, or if there was a fact question as to whether the parties were
merely agreeing to agree. Whether a contract is ambiguous is a question of law. John
Wood Group USA, Inc. v. ICO Inc., 26 S.W.3d 12, 16 (Tex. App.—Houston [1st
Dist.] 2000, pet. denied). Where the contract is unambiguous, the intent may be
determined as a matter of law. Id. Where the intent of the parties is not clear, the
issue is properly left for the jury. Foreca, S.A. v. GRD Dev. Co., Inc., 758 S.W.2d
744, 745 (Tex. 1988) (citing A. Corbin, Corbin on Contracts § 30 at 97 (1963)). 
When parties engage in negotiations and there is a disputed writing, if there is a
question as to whether the parties intended to be bound only by future agreements,
then the intent of the parties should be determined by a trier of fact. Id. (citing Scott
v. Ingle Bros. Pacific, Inc., 489 S.W.2d 554, 555 (Tex. 1972)). 
          In Foreca, the document at issue contained a description of the assets to be
sold, the price, the terms of payment, delivery information, and a provision regarding
warranties Id. at 745. The document also stated that it was “subject to legal
documentation contract to be drafted by Mr. Dunlap.” Id. The court stated that “we
hold that it is a question of fact in this case whether the terms agreed to and embodied
. . . in the writings were intended to be the final expressions of the contract or were
only preliminary negotiations which the parties did not intend to have legal
significance until execution of the contemplated legal documentation.” Id. at 746. 
The court went on to hold that the issue was properly submitted to a trier of fact for
resolution. Id. 
          We conclude that the letter of intent in this case contained statements that,
together, created an issue of fact as to whether the parties intended to be bound by the
proposed terms. First, the letter of intent referred to itself within the letter as a “letter
of intent.” It could be inferred that the purpose of the letter was to outline what the
parties intended to do in the future, and was not meant to be the final contract that
would bind the parties to the terms of the proposed asset sale. Second, the letter of
intent stated that appellees were “willing to proceed with an offer.” That language
could be interpreted to mean that the letter itself was not an offer, but appellees would
proceed in the future to extend an offer covering the sale of the assets that were listed. 
Finally, as in Foreca, the letter of intent contemplated future actions that were to be
taken to finalize an agreement. The letter of intent stated “[p]lease have your attorney
draft an agreement covering these points and fax it to . . .,” and “I agree to sign a
more detailed ‘agreement’ for myself and EBS that stipulates the above terms and
conditions.” While the language may have meant only that the parties would
memorialize an already existing contract, it could also be interpreted to mean that the
letter of intent would be only an outline for future negotiation and agreement.



          Appellee contends that the letter of intent is unambiguous because it states that,
by signing the letter of intent, appellants indicate “unconditional acceptance and
agreement with the terms and conditions.” A jury might very well find that the
quoted language creates a binding contract, but we believe that whether the parties
in this case created a binding contract, or merely purported to bind themselves to
agree in the future about the sale of the assets listed (which is not a contract at all),
is open to interpretation. Accordingly, we conclude that the first statement of the
letter of intent was not, as a matter of law, a term of a binding contract that required
appellants to forego their assertions that there was no uncured default or cause to
terminate the Finders Agreement. 
          Regardless of whether the letter of intent was meant to be binding as a whole,
there is also a fact question as to the meaning of the first statement in the letter of
intent that appellees rely on. The statement, “in accordance with our letters dated
February 23, 1995 to you and your attorney . . . our agreement with you and EBS has
been terminated,” could have reasonably been interpreted as an introductory remark,
and not a statement establishing the justification of termination by uncured default
or cause. We hold that the trial court could not have properly found, based upon the
first statement in the letter of intent, that the Finders Agreement was properly
terminated by uncured default or cause as a matter of law. 
          Appellees also raise an estoppel claim, arguing that the letter of intent was an
agreement between the parties that appellees would buy appellants’ book of business,
and that appellants are estopped from denying that the letter of intent is binding
because appellants have accepted benefits under the agreement. Appellants argue that
the letter of intent was not an agreement, and that all payments by appellees were
lifetime residual payments that appellees already owed to appellants. Both parties
agree that payments were made to appellants, but we cannot conclude from the record
that both parties understood that those payments were made and accepted pursuant
to the letter of intent. Appellees, who are now seeking a determination that payments
were made and accepted under the letter of intent, explicitly stated that those
payments had merely been “gifts,” and that they had not been obligated, under an
agreement, to make those payments. In the deposition of Raines, who was identified
as the president of RPS in the letter of intent, the following statements were made:
Attorney: So then your testimony today is that the
monies that you have paid Glen Francis to
date have been a gift?
 
Raines:Absolutely.
 
Attorney:And the reason that those monies are a gift is
because you were not obligated under any
agreement to make those payments to him?
 
Raines:That’s exactly right.
 
          Based upon the record, we cannot conclude, as a matter of law, that the parties
understood that the payments made to appellants were made pursuant to the terms of
the letter of intent. Further, appellants should not be estopped from asserting their
rights under the Finders Agreement when their acceptance of payments from
appellees was consistent with appellants’ right to residual payments under the Finders
Agreement. Lloyd v. Singleton, 16 S.W.2d 891, 894 (Tex. Civ. App.—Amarillo
1929, no writ) (“If an act is susceptible to two constructions, one of which is
consistent with a right asserted by the party sought to be estopped, it forms no
estoppel” (citations omitted)). Accordingly, we hold that the trial court erred in
granting summary judgment for appellees as to appellants’ breach of contract claim.
          We sustain appellants’ first issue. 
Wrongful Termination
          In their second issue, appellants argue the trial court erred in granting summary
judgment for appellees on appellants’ wrongful termination claim. The trial court
found that the Finders Agreement between the parties had expired by its own terms. 
Appellants contend that even though the Finders Agreement was to last only one year
from the date of its execution, it was impliedly renewed every year when the parties
continued their to operate their business relationship under the terms and conditions
of the Finders Agreement. Appellees do not dispute that the parties continued to
operate under the terms and conditions of the Finders Agreement. 
          When a contract is executed, whereby one party is to serve another for a
definite period, and the employment continues after the expiration of the period
without an express contract renewal, there is a presumption that the employment
continues under the terms of the expired contract. See Fenno v. Jacobe, 657 S.W.2d
844, 846 (Tex. App.—Houston [1st Dist.] 1983, writ ref’d n.r.e.); Thames v. Rotary
Eng’g Co., 315 S.W.2d 589, 591 (Tex. Civ. App.—El Paso 1958, writ ref’d n.r.e.). 
The implied contract that is created by the conduct of the parties is not necessarily of
the same durational period as the original contract. Farias v. Bexar County Bd. of
Trustees for Mental Retardation Serv., 925 F.2d 866, 876 (5th Cir. 1991). Where the
original employment contract is for a full year, the implied contract will not continue
for another full year unless it is shown that the parties mutually intended to renew the
contract for another year. Id. The intent of the parties may be derived from their acts
and conduct. Id. (citing Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros.
Welding Co., 480 S.W.2d 607, 609 (Tex. 1972) (holding that elements of mutual
agreement in an implied contract are inferred from the circumstances).
          There is no question that the Finders Agreement expired by its own terms. The
question before us is whether a fact issue existed as to whether the Finders Agreement
was renewed for another like term after each subsequent year. Here, where both
parties agree that they acted in conformity with the conditions and requirements of
the Finders Agreement for several years after the original expiration, and where
appellants assert that the conduct of the parties established an implied renewal for
another year, and where appellees state that the employment was only at will, we hold
that there is a fact issue as to whether the parties intended to renew the contract every
year. We cannot just look to the terms of the Finders Agreement, but we must
determine the intent of the parties by reviewing their acts and conduct. See Farias,
925 F.2d at 866. Appellants, as nonmovants, are to have every reasonable inference
indulged in their favor. Nixon, 690 S.W.2d 546, 548-49. While we do not otherwise
comment on the substantive merits of appellants’ wrongful termination claim, we
hold that it was error for the trial court to grant summary judgment for appellees on
appellants’ wrongful termination claim on the ground that the Finders Agreement had
expired by its own terms.
          Appellees also argue that the indemnification agreement signed by appellants
was a release of their wrongful termination claims. The grounds stated by the trial
court, however, were only that the Finders Agreement had expired by its own terms. 
We decline to address additional grounds not used by the trial court in granting
summary judgment for appellees. See Cates, 927 S.W.2d at 625 (“The court of
appeals should consider all grounds that the trial court rules on and may consider
grounds that the trial court does not rule on in the interest of judicial economy”). 
          We sustain appellants’ second issue.
Tortious Interference with Business Relationships
          In their third issue, appellants claim that the trial court erred in granting
summary judgment for appellees on appellants’ claim of tortious interference with
business relationships. As grounds, the trial court stated that the tortious interference
claim was barred by the statute of limitations as a matter of law. Appellants contend
that appellees did not establish as a matter of law when the wrongful termination
claim accrued, and that there was a delayed accrual because of the “continuing
wrongs” of appellees.
          Tortious interference claims are governed by a two-year statute of limitations. 
See First Nat’l Bank of Eagle Pass v. Levine, 721 S.W.2d 287, 289 (Tex. 1986). As
a basis for appellants’ tortious interference claim, appellants’ pleading stated that
“beginning in late 1994/early 1995, Retriever and Raines began offering Plaintiff’s
sales representatives more money to work for Retriever directly.” Appellants filed
the lawsuit on February 5, 1999, approximately four years after the alleged
interference occurred. Appellants contend that “Retriever’s continuing failure to pay
lifetime residuals amounted to a continuing wrong (and injury) that tolled the statute
of limitations.” 
          In most cases, a cause of action will begin to accrue on the date that the
plaintiff is injured. Childs v. Haussecker, 974 S.W.2d 31, 36 (Tex. 1998). Appellants
cite Newton v. Newton for the proposition that the continuing tort doctrine applies to
appellants’ tortious interference claim. 895 S.W.2d 503, 506 (Tex. App.—Forth
Worth 1995, no writ). In Newton, the court held that where there is an intentional
infliction of emotional distress claim, and the wrongful conduct was ongoing, then 
the limitations period does not start until the conduct ceases. Id. But where the
wrongful conduct has ceased, ongoing damages will not prevent the statute of
limitations from starting to run. Murray v. San Jacinto Agency Inc., 800 S.W.2d 826,
828 (Tex. 1990) (“The fact that damage may continue to occur for an extended period
. . . does not prevent limitations from starting to run”).
          We decline to apply the continuing tort doctrine to appellants’ tortious
interference claim. The wrongful conduct, if any, occurred when appellants’ sales
representatives were persuaded to discontinue their relations with appellants. 
Appellants’ pleading states that this occurred in 1994 and early in 1995. The
continuing loss of residual fees that may have resulted from that alleged wrongful
conduct does not toll the statute of limitations. See Murray, 800 S.W.2d at 828. 
Appellants have not complained of an ongoing wrong that justifies the application of
the continuing tort doctrine to their tortious interference claim, and, accordingly, we
hold that the trial court did not err in holding that appellants’ tortious interference
claim was barred by the statute of limitations as a matter of law.
          We overrule appellants’ third issue.
Conclusion
          We reverse the trial court’s grant of summary judgment as to appellants’ breach
of contract and wrongful termination claims, affirm the trial court’s grant of summary
judgment as to appellants’ tortious interference claim, and remand this case to the
trial court.
 

                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Jennings.